UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>First Southern National Bank, N.A.</u>

   v.                                      Case No. 19-cv-139-PB

<u>Nick A. Catsam,</u>
<u>John A. Catsam, and</u>
<u>Joseph Catsam</u>

**REPORT AND RECOMMENDATION**

Plaintiff First Southern National Bank, N.A. ("First Southern") holds a promissory note on which the borrower defaulted. Defendants Nick A. Catsam, John A. Catsam and Joseph Catsam ("the Catsams"), executed a personal Guarantees to help secure the debt underlying the note. In February 2019, First Southern filed suit to collect the amount due on the note, asserting claims of breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. <u>See</u> Complaint (Doc. No. 1). The defendants have defaulted. Doc. no. 8. Plaintiff's unopposed motion for default judgment (Doc. No. 10) is before the undersigned magistrate judge for a report and recommendation. For the reasons that follow, the district judge should grant plaintiff's motion for default judgment.

**I. Standard of Review**

After default is entered and when, as here, the amount at issue is not a sum certain, "the party must apply to the court

for a default judgment." Fed. R. Civ. P. 55(b)(2); see also KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 18-19 (1st Cir. 2003).[1]  "Although a defaulting party admits the factual basis of the claims asserted against it, the defaulting party does not admit the legal sufficiency of those claims."  10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013). Before entering default judgment, the court must determine whether "[t]he claimant [has] state[d] a legally valid claim for relief."  Id.; see also Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002).

**II.  Background**

By virtue of their default, defendants have admitted the following facts, as set forth in plaintiff's Complaint.  The defendants are members of Raintree Recreational Ventures, LLC ("RRV").  In 2003 RRV purchased the Newport Golf Club, forming Newport Golf Club, Inc. ("NGCI") to operate the club.

On January 30, 2009, RRV and NGCI entered into a loan agreement with Mascoma Savings Bank ("Mascoma"), for Loan No. 2038090 in the principal amount of $1,549,765.00.  In return, RRV and NGC (collectively "Borrower") gave Mascoma a promissory note, whereby Borrower promised to repay the principal, plus

---

[1] Although the amount of the debt is a sum certain, plaintiff's request for costs and fees is not.

interest calculated pursuant to an "Interest Calculation Method," in ten (10) years, with a final payment due November 28, 2019. The note is secured by a mortgage, an assignment of rents and a fixture filing on real estate located at 112 Unity Road, Newport, NH (the club's location), and a security interest in all the business assets of NGCI. The mortgage and related UCC filings were recorded in the Sullivan County New Hampshire Registry of Deeds and the New Hampshire Secretary of State's office.

The note is also secured by a "Continuing Guarantee of Payment and Performance" (the "Guaranty"), which each of the Defendants executed. The Guaranty provides:

> For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness . . . . Guarantor will make any payment to Lender or its order, on demand . . . . Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

The Guaranty binds the Guarantor to current and future "Indebtedness," which is defined in relevant part as:

> [A]ll of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal

>  expenses related thereto permitted by law …
>  'Indebtedness' includes … future advances, loans or
>  transactions that renew, extend, modify, refinance,
>  consolidate or substitute these debts, liabilities and
>  obligations . . . .

The Guaranty is binding on the Guarantor unless and until the Guarantor revokes it in writing.  Any revocation applies only to new indebtedness created after actual receipt by the Lender of the Guarantor's written revocation.

The defendants each executed a Guaranty, personally guaranteeing payment of the Indebtedness ("Guarantor" or collectively the "Guarantors").  Under the Guaranty, the Guarantors are jointly or severally or jointly and severally liable for payment of the Promissory Note and all Indebtedness.

On July 19, 2012, Mascoma sold the Note to First Southern. As part of that transaction, Mascoma assigned to First Southern the mortgage, the rents, and the security interests referenced in its UCC financing statements.  The assigned mortgage and UCC financing statements were filed with the Sullivan County Registry of Deeds and the New Hampshire Secretary of State. Mascoma also assigned to First Southern the Guaranty agreements executed by the defendants.

After making timely payments through April 2018, the Borrower failed to make its monthly payment due in May 2018 and all payments thereafter.  Under the terms of the Note, the missed payment constitutes a default, which entitles the lender

to accelerate the debt and demand payment of the entire unpaid principal and all accrued interest. Between May and November 2018, First Southern unsuccessfully attempted to make arrangements with the Borrower to cure the default. The Borrower did not respond to First Southern's efforts.

On December 21, 2018, after seven months of non-payment, First Southern sent the Borrower a Notice of Default and Demand for Payment (the "Notice of Default"), to accelerate the balance on the Note and demand immediate payment in full of all outstanding obligations. The Notice of Default was sent to, and received by, all three defendants. First Southern demanded immediate payment of $1,364,293.05, which included the principal balance and unpaid interest due, plus late charges and miscellaneous fees. To date, none of the principals of the Borrower has contacted First Southern to make the demanded payment or to seek to negotiate a repayment schedule.

After getting no response to the Notice of Default, First Southern demanded payment under the Guaranty. On January 23, 2018, First Southern demanded, in writing, immediate payment in full of all obligations due under the Promissory Note, for a total amount due of $1,370,460.14. First Southern advised the Guarantors that it would pursue all legal remedies to enforce the Guaranty if payment was not made by February 6, 2019. None

of the Guarantors responded. Neither did any of them revoke the Guaranty.

First Southern commenced this lawsuit shortly thereafter. All three defendants waived service of process. Doc. No. 7. None of them, however, answered or otherwise appeared. The Clerk of Court entered default against the defendant on April 25, 2019. See Fed. R. Civ. P. 55(a); LR 55.1.

### III. Discussion

#### A. Breach of Contract

First Southern's motion for default judgment seeks damages for the defendants' breach of their guaranty agreements. "A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Lassonde v. Stanton, 157 N.H. 582, 588, 956 A.2d 332 (2008) (quotation omitted). Given the admissions inherent in defendants' default, the court finds that the plaintiff has successfully established its breach of contract claim.

#### B. Damages

First Southern seeks $667,708.63 in damages for defendants' failure to honor their guaranty agreements. This amount includes the remaining principal, interest, and late fees on the note, and the costs of selling the subject property at

6

foreclosure, less the $800,000 foreclosure sale price. Pendygraft Decl. (Doc. No. 10-4) at 4-6.  As plaintiff's submissions support this damage figure, the district judge should award plaintiff this amount, plus any interest accruing from July 3, 2019 (the date plaintiff filed its motion for default judgment) through the date of judgment.

### C. Attorney's Fees and Costs

As previously noted, the terms of the guaranty agreements obligate the defendants to pay First Southern's collection costs and legal expenses.  Plaintiff requests $33,962.50 in attorney's fees and $594.20 in costs. Id. at 5; Pltff. Mot. (Doc. No. 10) at 1.  The defendants have not objected.

"The lodestar approach is the method of choice for calculating fee awards."  Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015).  Under this lodestar approach, a district court first "calculate[s] the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary.'" Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  The court then determines "a reasonable hourly rate or rates — a determination that is often benchmarked to the

7

prevailing rates in the community for lawyers of like qualifications, experience, and competence." Id.  Multiplying the results of these two inquiries yields the lodestar amount.  The court may then adjust the potential award based on factors not captured in the lodestar calculation.  See Hensley, 461 U.S. at 434 & n.9; Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997).

Here, while the court finds that plaintiff counsel's $275 hourly fee is reasonable, the court also notes several instances of block billing, the "industry term used to describe the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." E.E.O.C. v. AutoZone, Inc., 934 F. Supp. 2d 342, 354 (D. Mass. 2013) (citations and internal quotes omitted).

Courts "disfavor[] block-billing, as it requires "'decipher[ing].'" Conservation Law Found. v. Patrick, 767 F. Supp. 2d 244, 253 (D. Mass. 2011) (quoting Marrotta v. Suffolk Cty., 726 F. Supp. 2d 1, 7 n.7 (D. Mass. 2010)); see Lincoln-Sudbury Reg'l Sch. Dist. v. W., Civ. No. 16-10724-FDS, 2018 WL 2023517, at *4 (D. Mass. May 1, 2018) ("The use of block billing somewhat hinders the Court's analysis of the reasonableness of the time spent on each task.").  Such a practice warrants a reduction in the number of compensable hours.  See, e.g.,

8

Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008) (finding no error in district court's 15% global reduction of fee award as a sanction for block billing); Frost v. Town of Hampton, Civ. No. 09-cv-339-JL, 2010 WL 1667290, at *4 (D.N.H. (Apr. 23, 2010 (reducing claimed billable hours by "about 15% due to block billing).

    Here, roughly one-quarter of plaintiff's counsel's time is block billed. Connolly Decl. (Doc. No. 10-5) at 4-11.[2] Rather than globally reducing the fee award, the court applies a 15% reduction only to thirty hours, a conservative calculation of the block-billed time. A greater reduction is not warranted because this plaintiff's counsel provided "sufficiently detailed explanations of its bills and the significant majority of entries were not block billed." Lincoln-Sudbury Reg'l Sch. Dist., 2018 WL 2023517, at *4.

    At the rate of $275 per hour, the block-billed amount totals $8250. The court recommends a deduction of $1237.50 (15% of $8250). The court finds that counsel's itemization of costs is reasonable. The district judge should therefore award plaintiff's counsel $32,725 in fees and $594.20 in costs.

---

[2] Counsel's invoices contain block-billed entries for: 12/7/18 (4.4 hrs); 12/20/18 (2.9); 1/22/19 (3.6); 2/8/19 (5.3); 2/25/19 (4.9); 3/28/19 (4.1); and 4/11/19 (4.9)

## IV.   Conclusion

For the reasons set forth herein, the district judge should grant plaintiff's motion for default judgment against defendants Nick A. Catsam, John A. Catsam, and Joseph Catsam, in the amount of $667,708.63, plus interest accruing since July 3, 2019.  The district judge should also grant plaintiff's request for attorney's fees and costs in the amount of $33,319.20.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

*[signature]*
Andrea K. Johnstone
United States Magistrate Judge

September 19, 2019

cc:   counsel of record